UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CAROLYN J. FLORIMONTE,

PRO SE

(Enter above the full name of
plaintiff in this action)

v.

BOROUGH OF DALTON,

MUNICIPALITY

(Enter above the full name of
the defendant(s) in this action)

CIVIL CASE NO: 3:25-CV-409

(to be supplied by Clerk
of the District Court)

FILED
SCRANTON

MAR 10 2025

PER _____DJ_____
DEPUTY CLERK

## COMPLAINT

1. The plaintiff _Carolyn Jane Florimonte, Pro se_ a citizen of the County of _Lackawanna_ State of Pennsylvania, residing at _219 Third Street, Dalton, PA_ wishes to file a complaint under _Sections B, Section L, Section O, Code 240_ (give Title No. etc.) _Sections B, Section L, Section O, Code 240_

2. The defendant is _Borough of Dalton, a municpality located at 105 West Main Street, Dalton, PA_

3. STATEMENT OF CLAIM: (State below the facts of your case. If you have paper exhibits that give further information of your case, attach them to this completed form. Use as much space as you need. Attach extra sheet(s) if necessary)

3. (CONTINUED) 1. From the begining, Defendant has never had clean hands.

2. This matter arose sometime after 1986, when Defendant took a portion of the Dalton, PA, and hid two pipes for the express purpose of transferring stormwater from Huntington Woods, Dalton, PA. 3. In 2000, Plaintiff purchased the Property, reliant on sellers disclosure statement denying any flooding.

4. Plaintiff soon discovered a hidden pipe on an overgrown part of the small Property. 5. Defendant was called and promised to "fix the problem."

6. Since that time, the Property has been supersaturated by flooding for most of the year by water from Third Street and by water from Huntington Woods.

7. At that time, had Defendant installed catch basins and not refused to end this the flooding problem would not be in this Court today. (See attached )

4. WHEREFORE, plaintiff prays that this Honorable Court will find Defendant has violated Plaintiff's civil and private property rights pursuant to the First, Fifth and Fourteenth Amendments to the U. S. Constitution and order the installation of catch basins on Third Street opposite Plaintiff's Property where stormwater continues to collect.  Plaintiff also requests a jury trial to provide compensation for the physical injuries and as well as ongoing emotional injury and trauma of September 13, 2023, resulting from malicious, retaliatory, intentional flooding by Defendant. (See atta



_Carolyn J. Florimonte_
(Signature of Plaintiff)

Carolyn J. Florimonte
(Printed Name of Plaintiff)

219 Third Street

P. O. Box 375
Dalton, PA   18414
(Address of Plaintiff)

(570) 561-0426
(Phone Number of Plaintiff)

COMPLAINT CONTINUED FROM JS44 PRO SE FORM

*Plaintiff hereby incorporates all information and Exhibits provided to the Court on March 5, 2025, in the Emergency Motion for a Temporary Protection Order which preceded this Complaint.*

Now comes, Carolyn J. Florimonte, Plaintiff, pro se, to complain against the Borough of Dalton, PA, Defendant, for retaliatory, discriminatory, intentional, reckless, malicious, negligent supersaturating flooding of her Property, known as 219 Third Street, Dalton, PA, for a period of twenty-five years. Flooding has killed more than one hundred (100) of her trees, destroyed mature lilacs, rhododendrons and holly, causing the Property to be supersaturated for months each year while Defendant engages in continuous disregard for Plaintiff, irreparably injuring her twice during that time.

This complaint is filed under Section B Civil Rights – Code 440, Section O, Torts/Personal Injury - Code 360 and Section M, - Code 240, Torts to Land:

> Action alleging trespass to land, nuisance, contamination or other unlawful entry on or interference with real

property possessed by another.

Plaintiff seeks relief by a jury trial; a Court Order requiring Defendant to install catch basins as it has on all other streets in Dalton; compensation for costs already incurred to safely remove dead trees since September 7, 2022, which endangered Plaintiff as well as vehicles and pedestrians - invoice is included in the Emergency Motion; payment of full value of 100 trees – Federal Government values each tree at $1000 (one thousand dollars); compensation for damages to the house already incurred and paid, invoice included in the Emergency Motion; all medical costs now and in the future associated with the irreparable injuries suffered on September 13, 2023; and compensation for years of intentional, blatant infliction of physical and emotional distress as well as an ongoing taking of the Property during a continuing, flooding trespass.

## Background

1. Defendant has engaged in providing false information to the Court over a span of twenty-five (25) years, for purposes of denying responsibility or knowing who installed the pipes, in

(2)

order to remain on the Property and to continue delivering stormwater through artificial conveyance, to the Property. (EXHIBIT ONE – *Testimony by Robert Fisher, on April 3, 2009, regarding the installation of lower pipe.*)

2. Defendant wanted Lot #17, a third of the Property, and so tried to extort the deed to that Lot from the previous owners in exchange for a dollar ($1.00), or the flooding would continue. Doctrine of "unconstitutional conditions."

3. Defendant demanded a free easement from Plaintiff in 2001, or the flooding and pipes would continue to flood Lot #17. Doctrine of "unconstitutional conditions."

4. Defendant again wanted an easement in 2013, during a Hearing for removal of pipes, which Plaintiff refused.

5. In retaliation, Defendant continues to deny catch basins which would alleviate flooding on Third Street, while providing catch basins to all other streets in Dalton, PA

6. Defendant committed Constitutional violations of the First, Fifth, Fourteenth Amendments and the Doctrine of "unconditional conditions" as follows:

(3)


### a. First Amendment

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or *abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.* Emphasis added.

### b. Fifth Amendment

No person...shall be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

### c. Fourteenth Amendment

**Section 1**

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.* Emphasis added.

### d. Doctrine of "unconstitutional conditions"

The doctrine prevents the government from forcing people to give up constitutional rights in exchange for government benefits.

The doctrine can be used to evaluate the constitutionality of government schemes that impose conditions on people in exchange for benefits.

(4)

7. Defendant falsely claimed that 219 Third Street is where the stormwater would collect anyhow.

8. Stormwater always collects at 224 Third Street, Dalton, PA, just as it did from 2000 to 2013, before the pipes were removed from the Property. *(EXHIBIT TWO – photos of Third Street from 2004 to 2013, evidence that the normal collection point of all stormwaters is where it always has been - at 224 Third Street, a former wetland, while the pipes were also on the Property).*

9. Defendant never divulged, until trial in 2011, that the stormwater emerging from the pipes, originated in Huntington Woods, Dalton, PA, a new development uphill from Third Street.

10. Defendant fought to stay on the Property, falsely claiming a prescriptive easement, which Plaintiff disproved at trial.

11. Plaintiff was a registered, licensed Pennsylvania Real Estate agent from 1980 to 1988. She was often on Third Street in Dalton to show new houses.

12. During that time, only half of Third Street was paved, the lower half was dirt and no pipe existed under the road.

13. At some point in the 1980's, Defendant installed a pipe

(5)

leading from 224 Third Street to the Property, then paved the road, hiding that pipe (remainder of lower pipe is still visible) as well as a second pipe emerging from the upper portion of Third Street, on the Property.

14. Defendant also installed a commercial sump pump on 224 Third Street to pump stormwater under the street to Lot #17 of the Property. (EXHIBIT THREE - *Photos of commercial sump pump in front yard of 224 Third Street, leading to Main pipe, then to Lot # 17, included are Evaluations by Jack Moreck and Dennis Peters, registered Engineer*).

15. Defendant also placed a third stormwater pipe, unknown until its removal in 2018, behind the stone wall at the back of 224 Third Street, making it necessary to use a commercial sump pump to force that stormwater onto Lot # 17. (EXHIBIT THREE)

16. Defendant, during Hearing in 2013, for removal of pipes, again wanted an easement despite being apprised of its right to pursue eminent domain by the Commonwealth Court of Pennsylvania

17. Plaintiff denied an easement at that time.

18. Defendant, in 2001, had also demanded an easement or the flooding would continue – *"unconstitutional conditions."*

19. Defendant tried to extort prior owners with a threat that unless a deed to Lot #17, was signed over to the Borough for $1.00, the flooding would continue.

20. Sellers, in 2000, signed a Disclosure claiming no flooding on the Property.   (EXHIBIT FOUR – *Disclosure of 2000*).

21. Defendant's actions caused massive flooding not only on Lot # 17, it encompassed the entire Property, including Lot # 16 and Lot # 30.  (EXHIBIT FIVE– *plat map of Lots on Third Street*).

22.  During the years from 2000 to 2013, Plaintiff, her home and Property were forced into an ongoing servitude which prevented her, as it does now, from selling her home, without possible repercussions.

23.  Plaintiff would never agree to an easement, under any terms, because of Defendant's actions since 2000 – making false claims regarding the flooding, always blaming Plaintiff for the problem, ignoring  Cease and Desists, not acting to protect Plaintiff after an injury in 2005.

(7)

24. In 2000, Plaintiff walked into a nightmare of endless costs to repair her home, endless fear and dread whenever rain fell and finally irreparable internal injuries from a fall as stormwater violently rushed into her garage, from which, at the age of eighty (80) she cannot recover.

25. No amount of compensation can restore Plaintiff to her full height, lessened by the fall or end the back pain resulting from the fall which limits her daily activities.

26. Surgery for a full prolapse, suffered during the fall is not a guarantee of non-recurrence or an end to daily incontinence caused by the fall.

27. An entire year of struggle passed before doctors and medical procedures determined that Plaintiff had sustained a sliding hiatal hernia.

28. Surgery for the hernia has a five-year survival rate of 90%. Without surgery, Plaintiff suffers daily acid reflux and discomfort.

29. Plaintiff continues to suffer daily from the injuries which would not have happened had Defendant provided

(8)

catch basins to Third Street – a simple fix which is still denied by Defendant.

30. Defendant owes a duty to protect Plaintiff, as it has other private property owners in Dalton but instead has singled out Plaintiff and her Property to shoulder the burden of repeated floodings every year, year after year.

31. Defendant continues to use Plaintiff's entire Property as a pathway to pollute Ackerly Creek and the Chesapeake Bay.

32. Plaintiff needs to sell her home so that she can leave Dalton to be where her family can care for her in her final years as she is now experiencing speech problems, loss of short term memory after hematoma and balance problems.

33. There is no doubt that the injury of September 13, 2023, has shortened Plaintiff's life span. (See AFFIVDAVIT of February 26, 2025).

## CONCLUSION

The darkest days of Plaintiff's life have occurred since she bought the Property on Third Street in Dalton. Living with constant stress and fear of injury is overwhelming her life.

(9)

Claims from the fall of September 13, 2023, are for injuries, including symptoms of aphasia by hematoma; serious physical, permanent and emotional injury to Plaintiff's health causing great emotional distress, mental and physical pain and suffering now and in the future - not limited to past and future medical expenses and compensatory damages as permitted by law. All results of many procedures regarding the fall will be presented at trial.

**Wherefore** for the forgoing reasons, including Fraud upon the Court, Plaintiff prays that the Court will provide a jury trial to determine compensation for the continuing trespass by flooding which has caused irreparable harm and injury to Plaintiff as well as any other penalties the Court may deem necessary.

Respectfully submitted.

*Carolyn J. Florimonte, pro se*
Carolyn J. Florimonte, pro se

(10)